ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona
DENNIS C. BASTRON
Assistant U.S. Attorney
Arizona State Bar No. 027294
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Dennis.Bastron@usdoj.gov
*Attorney for Respondent*

BEN BRIESCHKE
Senior Attorney
Federal Bureau of Prisons
*Of Counsel*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Jayne,<br><br>         Jordan,<br><br>    v.<br><br>B. von Blanckensee, Warden,<br><br>         Respondent. | No. CV-18-338-TUC-RM (DTF)<br><br>**RETURN AND ANSWER** |

Respondent B. von Blanckensee[1] hereby returns and answers Petitioner Michael Jayne's Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (Doc. 8). The Warden denies the allegations in Jayne's petition and respectfully requests that the Court dismiss the petition.

Respondent supports this return and answer with the following memorandum.

---

[1] Under 28 U.S.C. § 2242, the proper respondent in a habeas case is the warden where the petitioner is incarcerated. *Rumsfield v. Padilla*, 542 U.S. 426, 435-36 (2004). Warden B. von Blanckensee is the new Complex Warden at FCC Tucson, so she should be substituted as the respondent here under Fed. R. Civ. P. 25(d).

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. Petitioner

Michael Aaron Jayne, register number 74636-065, is currently incarcerated at the United States Penitentiary, in Tucson, Arizona. He is serving a 120-month sentence for being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922 (G)(1). *See Exhibit A: Declaration of Benjamin J. Brieschke*, Attachment 1, (*"Exhibit A-1"*) *SENTRY Public Information Inmate Data*. A Texas federal court sentenced Jayne on March 13, 2013. *Id.* His projected release is August 21, 2021, via Good Conduct Time release, and Jayne has a home-detention-eligibility date of February 21, 2021. *Id.*

Petitioner arrived at the USP-Tucson on December 22, 2017. *See Exhibit A-2: Inmate History* ("TCP A-DES DESIGNATED AT ASSIGNED FACIL 12-22-2017," (TCP is the code for USP Tucson)).

### B. Petition

On July 9, 2018, Jayne filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See* Doc. 1. The operative petition is an amended one that Jayne filed about a month later. *See* Doc. 8. In that amended petition, Jayne raised four grounds for relief. This Court dismissed two of those claims—Jayne's claims regarding his sentence in Grounds One and Three—but ordered the Warden to answer Jayne's custody-level claims in Grounds One and Two, and his Interstate Agreement on Detainers (IAD) claim in Ground Four. *See* Doc 9.

### C. Relevant Bureau of Prisons Policies

#### 1. Inmate Classification Policy

In order to house inmates at the correct security level, and in a manner consistent with their programming needs, the Bureau of Prisons scores all inmates under Program Statement 5100.08, "Inmate Security Designation and Custody Classification," which implements the BOP's authority under 18 U.S.C. § 3621(b) to designate an inmate's place of imprisonment. *See Exhibit A-3: Program Statement 5100.08* at 1.

BOP institutions are classified into one of five security levels, Minimum, Low, Medium, High, and Administrative, based on the level of security and staff supervision the institution can provide. *See Exhibit A-3*, Ch. 1 at 1. BOP assigns inmates to an institution based on the level of security and supervision the inmate needs, the level of security and staff supervision the institution can provide, and the inmate's program needs (i.e., substance abuse treatment, education, counseling, medical or mental health treatment). *Id*. The Bureau also considers other factors in assigning an institution, including the inmate's release residence; the level of overcrowding at an institution; additional security measures to protect the inmate, victims, witnesses, or the general public; and any other relevant factor that may impact the inmate's confinement, the protection of society or the safe, and orderly management of a Bureau of Prisons facility. *Id.*, Ch. 1 at 1-2.

To designate an inmate to an institution, BOP designation officials gather and assess information from the sentencing court, the U.S. Marshals Service, the U.S. Attorney's Office, and the U.S. Probation Office, then they enter the information into the SENTRY database to generate an initial security-point score for the inmate. *See id.*, Ch. 1 at 2. The officials match the point score with a commensurate security-level institution, taking into consideration other relevant designation factors, and they designate the inmate to the institution. *Id.*, Ch. 1 at 2-3. An inmate's security-point score is not the only factor used in determining a commensurate security level for an inmate. *Id.*, Ch. 1 at 2. Finally, the officials assign the inmate a custody level that is consistent with the mission of the designated institution. *Id.*, Ch. 1 at 3. The custody level ("Community," "Out," "In" or "Maximum") dictates the degree of staff supervision required for an inmate. *Id.*, Ch. 2 at 3.

An inmate's custody classification is ordinarily reviewed about seven months after the initial classification and at least every 12 months thereafter. *See id.*, Ch. 6 at 1. Periodic custody classification permits the BOP to ensure the inmate is properly assigned according to the inmate's criminal history and behavior, and his or her institutional

3

adjustment. *Id*. Custody classification simply recommends an inmate's custody level; BOP staff members, and ultimately the Warden, may use professional judgment within the policy guidelines. *Id.*, Ch. 6 at 1-2. Custody changes are not dictated solely by the point total. *Id.*

Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment. *See id.*, Ch. 6 at 1. Custody classification involves entering certain data into a computer program that calculates a Base Score, with applicable scoring variances, and a Custody Score, and ultimately generates a recommended security level and custody level. *See id.*, Ch. 6 at 2 -22. Elements of the Base Score include: type of detainer; severity of current offense; months to release date; criminal history score; history of escape or attempts; history of violence; voluntary surrender; age; education level; and drug/alcohol abuse. *Id.*, Ch. 6 at 2-13. The Custody Score includes: percentage of time served; program participation; living skills; type and number of most serious incident reports; frequency of incident reports; and, family/community ties. *Id.*, Ch. 6 at 13-19.

An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution. *See id.*, Ch. 6 at 1. Of course, the Custody Classification Form only *recommends* an inmate's custody. *Id*. The Unit Team or Warden have the final review. *Id.* Ch. 6 at 1-2. Custody changes are not dictated solely by the point total. *Id*. The intent of the Custody Classification system is to permit staff to use professional judgement within specific guidelines. *Id*.

### 2. Administrative Remedy Program

To facilitate inmate complaints, the BOP operates an Administrative Remedy Program, which is designed to allow an inmate to seek formal review of an issue relating to any aspect of his or her confinement. *See* 28 C.F.R. § 542.10(a). The program contains four levels of review. Initially, an inmate is required to attempt to informally resolve his or her grievance with Unit Team staff. *See* 28 C.F.R. § 542.13(a). If the inmate is unable to resolve the grievance informally, he may submit an Administrative Remedy Request

to the Warden using the BP-9 Form. *See* 28 C.F.R. §§ 542.13(a), 542.14. If the inmate is not satisfied with the Warden's response, he may submit an Appeal on the BP-10 Form to the Regional Director within 20 days of the date the Warden signed the response. *See* 28 C.F.R. § 542.15. If the inmate is not satisfied with the Regional Director's response, he may submit an Appeal on the BP-11 Form to the General Counsel within 30 days of the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final level of administrative review. *Id*.

### 3. Halfway House Eligibility

BOP Program Statement 7320.01, Home Confinement, citing 18 U.S.C. § 3624(C), states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community. The authority provided by this subsection may be used to place a prisoner on home confinement.

*See Exhibit A-4: Bureau of Prisons Program Statement 7320.01, Home Confinement* at 3. "Ordinarily, the length of placement ordinarily is limited to the last 10 percent of the inmate's term to be served, or six months, whichever is less." *Id*. "All inmates referred to community corrections are eligible to be considered for home confinement placement." *Id*., Sec. 6 at 5.

### D. Facts

Jayne's most recent custody-classification review occurred on July 7, 2018. *See Exhibit A-5: Male Custody Classification Form, July 7, 2018*. Jayne's Base Score includes a criminal history score of 10 points. *Id*. ("CRIM HIST SCORE: (10) <5 YRS SERIOUS). Jayne has no Public Safety Factors and has a Custody Status as "High-In." *Id*. He has no detainers. *Id*. ("DETAINER; (0) NONE"). His home-detention eligibility date is February 21, 2021. *See Exhibit A-6: Sentencing Monitoring Computation Data for Michael Aaron Jayne, Reg No.: 74636-065*.

BOP records show that Jayne has not challenged his custody-classification score in a request for administrative remedy. *See Exhibit A-7: Administrative Remedy Generalized Retrieval.* A review of Jayne's administrative-remedy filings reveals that Jayne has filed 61 remedy submissions at the various remedy levels. *Id*. Only three of those remedy submissions were filed at with the General Counsel, which is the final level of administrative review. *See* 28 C.F.R. § 542.15. Only the following remedies were fully exhausted:

1. 896816 - A1: An appeal of a Disciplinary report;
2. 933019[2] – A1: A request to have a staff member prosecuted;
3. 944243 – A1: An appeal of Disciplinary report.

Jayne has not filed an administrative remedy regarding the issues he raises in this habeas petition and therefore has not exhausted the administrative-remedy process.

## II. LEGAL ANALYSIS

This Court should deny Jayne's habeas petition for the following reasons: First, Jayne failed to exhaust his administrative remedies; Second, this Court lacks jurisdiction to entertain a challenge to Jayne's custody classification, and the relief he seeks regarding his classification is not available through a writ of habeas corpus; Third, Jayne's IAD claim is moot, as there is no detainer on file.

**A.  Jayne failed to exhaust his administrative remedies.**

As a prudential matter, a court will require a habeas petitioner to exhaust available administrative remedies before he files a habeas petition under 28 U.S.C. § 2241. *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991). Administrative exhaustion protects an administrative agency's authority, discouraging disregard of its procedures and permitting it to correct its own errors. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). Administrative exhaustion also promotes efficiency by permitting matters to be

---

[2] Remedy 933019 was filed twice at the Central Office level but was only counted as one filing for purposes of exhaustion in this Answer.

handled administratively, where a resolution often can be reached more quickly than in the courts. *Woodford*, 548 U.S. at 89. Additionally, administrative exhaustion promotes judicial economy by "reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The inmate must complete the administrative-review process in accordance with the applicable rules. *See Woodford*, 548 U.S. at 92. Proper exhaustion requires "compliance with an agency's deadlines and other critical rules. . . ." *Id.* at 89. Exhaustion is required for all suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). This is true regardless of the type of relief offered through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

According to Jayne's administrative-remedy index, Jayne has fully exhausted only three administrative remedies. *See Exhibit A-7.* None of those three fully exhausted remedies raised the issues Jayne raises here. Two of the remedies related to the disciplinary process, and the other one related to allegations of staff misconduct and Jayne's desire to see that staff member prosecuted. (*See* Sec. I (D) above.) Thus, Jayune cannot prove that he has exhausted the administrative-remedy process. Jayne has deprived the BOP of the opportunity to review and respond to his contentions before he filed this petition. His failure to exhaust prior to filing this action is contrary to clearly established law. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731; *Presier v. Rodriguez*, 411 U.S. 475 (1973). The Court should therefor deny Jayne any habeas relief. *See Woodford*, 548 U.S. at 89-92.

**B.   This Court lacks jurisdiction to entertain Jayne's habeas petition.**

The scope of a § 2241 habeas petition is limited to a prisoner's challenge to the fact or duration of his or her custody, with the traditional remedy being immediate or sooner release from custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991); *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979). In the Ninth Circuit, "habeas jurisdiction is absent . . . where a successful challenge to a

prison condition will not necessarily shorten the prisoner's sentence." *Ramirez v. Galaza*, 334 F.3d 850, 858-59 (9th Cir. 2003).

Here, Jayne challenges the accuracy of his custody classification—not the fact or duration of his confinement. Even if his allegations about custody classification were true, his requested relief would have no impact on the fact or the duration of his incarceration. Thus, habeas relief is unavailable. *See Morrison v. Woodring*, 191 Fed. Appx. 606, 606 (9th Cir. 2006) (habeas relief is unavailable to a prisoner challenging his custody classification); *Estrada v. Chavez*, 2009 WL 1383328, at *4-5 (D. Ariz. May 15, 2009) (court lacked jurisdiction over a § 2241 challenge to an inmate's classification because, even if the inmate's security level was recalculated, the length of his sentence would not change).[3]

Moreover, "Congress has given federal prison officials full discretion to control . . . conditions of confinement," such as "prisoner classification and eligibility for rehabilitative programs." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Leggins v. Duncan*, 2010 WL 4906689, *2 (D. Ariz. Nov. 24, 2010) ("[T]he Supreme Court has stated that Congress delegated to prison officials full discretion regarding matters of prison classification in the federal system." (internal citations and quotation marks omitted)). The BOP's discretion flows from federal statutes. *See Moody*, 429 U.S. at 88 n.9. Specifically, 18 U.S.C. § 4081 directs federal correctional institutions to develop an "integrated system which will assure the proper classification and segregation of Federal prisoners . . . ." Section 3621(b) likewise affords the BOP authority to designate the place of a prisoner's imprisonment, in consideration of, among other things, "the nature and circumstances of the offense" and "the history and characteristics of the prisoner." *See* 18

---

[3] Jayne's allegation is that the BOP is misapplying or misreading its own program statement in classifying him. *See* Doc. 8, Claims 1 and 2. Even if his unsupported allegation were true, a claim that the BOP violated its own program statements is insufficient to warrant habeas relief because "noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) *citing Jacks v. Crabtree*, 114 F.3d 983, 985 n. 1 (9th Cir. 1997) and *Reno v. Koray*, 515 U.S. 50, 61 (1995); *see also Davidson v. McClintock*, 2014 WL 2921900, *2 (D. Ariz. June 27, 2014).

U.S.C. § 3621(b)(2) & (3). As a result of that authority and that broad discretion, BOP inmates have "no right to be at any particular prison" within the federal system, *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991), and they have "no constitutional right to a particular classification status," *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the decision to assign an inmate to a particular institution "is not subject to audit under the Due Process Clause.")

Finally, consistent with the BOP classification and designation authority, 18 U.S.C. § 3625 precludes judicial review under the Administrative Procedure Act of the BOP's substantive § 3621 determinations. Thus, in another context, the Ninth Circuit has held that § 3625 deprives a federal court of jurisdiction to entertain a § 2241 petition challenging the BOP's substantive decisions about an inmate's eligibility for benefits under 18 U.S.C. § 3621(e). *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("to find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625."); *U.S. v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (district court lacks jurisdiction to override BOP's "primary authority" over designation decisions).

In sum, whether it is because Jayne seeks relief that is not available in a habeas petition, or because the individualized classification decision here is not subject to judicial review, this Court lacks jurisdiction to entertain Jayne's habeas petition. Accordingly, this Court should deny Jayne's petition.

**C. Jayne's IAD claim is moot: he has no detainers, and his home-confinement release date is six months before his projected release date.**

Jayne alleges that his due process rights were violated because of an illegal warrant issued by the Dooley County, Georgia, sheriff's department. He insists that the warrant affects his eligibility to be placed in a halfway house because it impacts his early-release risk factors. But Jayne has no detainers, and he has a home detention date six months before his projected release date, so this claim should be dismissed as moot.

9

U.S. Const. art. III, § 2 requires a live case or controversy to satisfy jurisdiction, which means the parties "must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Here, for the Court to retain jurisdiction, Jayne "must have suffered, or be threatened with, an actual injury . . . likely to be redressed by a favorable judicial decision." *Lewis v. Contl. Bank*, 494 U.S. 472, 477-78 (1990). That does not exist here.

Jayne has no detainer on file with the BOP. *See Exhibit A-5*. His records state, "DETAINER; (0) NONE." *Id*. Moreover, Jayne's home-detention-eligibility date is February 21, 2021, which is six months prior to his projected release date via Good Time of August 21, 2021. *See Exhibit 1-2*. Jayne cannot meet the active-case-or-controversy requirement since he has no detainers and has a home-detention-eligibility date for six months before his projected release date. *See Lane v Williams*, 455 U.S. 624, 633 (1982) (Because "respondents have obtained all the relief that they sought . . . no live controversy remains."); *Murphy v. Hunt*, 455 U.S. 478, 481 (1984) (a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them"); *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996) (same); *Fendler v. U.S. Bureau of Prisons*, 846 F.2d 550, 555 (9th Cir. 1988) (finding that release of petitioner on parole mooted his petition seeking earlier release date on the grounds contending that Parole Commission had improperly delayed his release date).

For those reasons, this Court should dismiss Jayne's claim in Ground Four as moot.

**III. CONCLUSION**

For the foregoing reasons, this Court deny Jayne's habeas petition and dismiss the case.

Respectfully submitted on November 26, 2018.

> ELIZABETH A. STRANGE
> First Assistant United States Attorney
> District of Arizona
>
> By *s/ Dennis C. Bastron*
> DENNIS C. BASTRON
> Assistant United States Attorney
> *Attorney for Respondent*
>
> BEN BRIESCHKE
> Senior Attorney
> Federal Bureau of Prisons
> *Of Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. Additionally, I served the attached document by U.S. mail on the following, who are not registered participants of the CM/ECF System:

Michael Jayne
Reg. No. 74636-065
U.S.P. Tucson
P.O. Box 24550
Tucson, AZ 85734
*Petitioner*

By *s/ Dennis C. Bastron*