# Exhibit A, Attachment 4

# Program Statement 7320.01, Home Confinement


**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E  N O T I C E
OPI:         RSD/RSB
NUMBER:   7320.01, CN-2
DATE:       December 15, 2017

# Home Confinement

*Approved*: Mark S. Inch
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following change to Program Statement 7320.01, **Home Confinement**, dated September 6, 1995. The single change is marked with a ==highlight== and inserted into the policy.

```
6. ELIGIBILITY FOR HOME CONFINEMENT.  All inmates referred to
community corrections are eligible to be considered for home
confinement placement.
```

While the Bureau also provides Community Corrections Center (CCC) services for persons as a condition of probation, parole, or supervised release, only in the most extraordinary circumstances will the Bureau assume responsibility for such persons on home confinement.

The Community Corrections Manager (CCM) shall ensure that each appropriate inmate is placed on home confinement as soon as otherwise eligible. The CCM ~~shall~~ ==can== consult with the Community Corrections Regional Administrator (CCRA), or designee, prior to placing on home confinement any inmate for whom any of the following factors apply:



**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:  RSD/RSB
NUMBER:  7320.01, CN-1
DATE:  August 1, 2016

# Home Confinement

      /s/
*Approved*:  Thomas R. Kane
        Acting Director, Federal Bureau of Prisons

This Change Notice (CN) implements a change to Program Statement 7320.01, **Home Confinement**, dated September 6, 1995.  This CN removes the requirement of subsistence collection for any resident while on Home Confinement.  The new language is ==highlighted==.

The following language is removed from Section 8.c.(2) of the Program Statement:

```
(2) Subsistence Contributions.  Providers shall collect 25% of
each employed resident's weekly gross income, rounded down to a
whole dollar amount.  Home confinement residents who are not
employed, but have other means of financial support, shall
contribute an appropriate amount as determined by the provider
and approved by the CCM. Ordinarily, the amount should
approximate 25% of the resident's weekly income.  Subsistence
contributions collected shall be used to defray program costs,
and the provider shall deduct the amount collected from the
amounts billed to the Bureau. In many cases, inmate subsistence
contributions will cover the entire cost of home confinement;
however, individual subsistence collections may not exceed the
weekly cumulative contract per diem rate (i.e., the daily rate x
7).  Providers shall provide receipts to program participants for
all collections and shall maintain collection records for audit
purposes.
```

Section 8.c.(2) now reads:

```
(2) Subsistence Contributions.  Home confinement residents are
not required to pay subsistence.
```



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CCD
**NUMBER:** 7320.01
**DATE:** September 6, 1995
**SUBJECT:** Home Confinement

1. <u>PURPOSE AND SCOPE</u>.  To establish policy and procedures for referral and placement of pre-release inmates in Community Corrections home confinement programs.

Title 18, Section 3624(c) of the United States Code allows inmates sentenced under "old law" and "new law" statutes, to be placed on home confinement for pre-release purposes:

> **(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community.  The authority provided by this subsection may be used to place a prisoner on home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.**

Ordinarily, the length of placement ordinarily is limited to the last 10 percent of the inmate's term to be served, or six months, whichever is less.  An exception is inmates with sentences of more than 12 months but not more than 30 months who have successfully completed the institutional phase of the Intensive Confinement Centers (ICCs) program.  Bureau authority for ICCs is established by Title 18, U.S.C., Section 4046.

The Bureau does <u>**not**</u> have statutory authority to designate a home confinement program for an inmate at the beginning of his or her sentence.  This is supported in Title 18, U.S.C., Section 3621, which requires that the Bureau designate any available <u>**penal or correctional**</u> facility as the place of a prisoner's imprisonment.

Home confinement is a time of testing and an opportunity for inmates to assume increasing levels of personal responsibility while providing sufficient restriction to promote community safety and continue the sanction of the sentence.

```
                                               P.S. 7320.01
                                           September 6, 1995
                                                      Page 2
```

Compliance with the conditions of home confinement may be monitored by electronic monitoring equipment or by regular telephone or in person contacts by supervision staff. Supervision may be provided by staff from the U.S. Probation Service, contract halfway house services, or other governmental agencies.

2. <u>PROGRAM OBJECTIVES.</u>  The expected results of this program are:

  a.  Inmates who are eligible and approved will be placed on home confinement programs.

  b.  Inmates on home confinement programs will receive appropriate supervision.

  c.  The public will be protected from any undue risk.

  d.  Any inmate who violates a condition of home confinement will be appropriately disciplined, depending on the nature of the violation.

3. <u>DIRECTIVES REFERENCED</u>

```
    P.S. 5100.05    Security Designation and Custody
                    Classification Manual (06/16/94)
    P.S. 7300.08    Community Corrections Manual (04/01/91)
    P.S. 7310.02    Community Corrections Center (CCC)
                    Utilization and Transfer Procedure (10/19/93)
```

4. <u>STANDARDS REFERENCED.</u>  None.

5. <u>DEFINITIONS.</u>  For the purposes of this Operations Memorandum, the following definitions apply:

  a.  <u>Home Confinement.</u>  Any circumstance in which the inmate is required to remain in the home during specified hours.

  b.  <u>Electronic Monitoring Equipment.</u>  The telemetry technology used to ensure that a program participant remains in a specified location during the required hours:

    (1)  <u>Continuously Signalling Devices.</u>  A "transmitter" worn by the inmate which emits a signal with a range of 100 to 200 feet.

    The signal is received by a receiver dialer unit installed at the monitored location to notify the central computer when the inmate comes within or goes out of range of the unit.  The central computer contains the inmate's schedule and, when notified of a change in the inmate's status, compares the time with the schedule to determine if the break in contact is authorized.  If not authorized, the computer sends an alert.

      (2)  <u>Programmed Contact Device.</u>  A computer which contacts the inmate periodically to ensure that he or she is at the monitored location and verifies that the person responding is the monitored inmate.

      Verification may be accomplished in a variety of ways, including, but not limited to, a device the inmate wears and voice verification.

      (3)  <u>"Hybrid" Equipment.</u>  Equipment which combines the two types of equipment described above but functions similarly to a continuously signalling device.

      When the equipment notes the inmate has left the monitored range at an unauthorized time, it functions similarly to a programmed contact device by telephonically contacting the inmate and verifying that the person responding is the monitored inmate.  If verification does not occur, notification of the violation is made.

  c.  <u>"Old Law" and "New Law" Sentences</u>

      (1)  "Old law" refers to the federal criminal code in effect prior to the implementation of the Sentencing Reform Act of 1984 (Title II of the Comprehensive Crime Control Act of 1984).

      (2)  "New law" is that Act (also known as the Sentencing Guidelines) which applies to federal criminal offenses committed on or after November 1, 1987.

6.  <u>ELIGIBILITY FOR HOME CONFINEMENT.</u>  All inmates referred to community corrections are eligible to be considered for home confinement placement.

While the Bureau also provides Community Corrections Center (CCC) services for persons as a condition of probation, parole, or supervised release, only in the most extraordinary circumstances will the Bureau assume responsibility for such persons on home confinement.

The Community Corrections Manager (CCM) shall ensure that each appropriate inmate is placed on home confinement as soon as otherwise eligible.  The CCM ~~shall~~ can consult with the Community Corrections Regional Administrator (CCRA), or designee, prior to placing on home confinement any inmate for whom any of the following factors apply:

  a.  Public Safety Factors as defined in the Security Designation and Custody Classification Manual; or

  b.  Central Inmate Monitoring case (except "pure" separation cases); or

   c.  Sensitive, or high profile case or one who might generate undue public concern; or

   d.  History of escape or prior CCC failure; or

   e.  Unlikely to be employed.  Historically, inmates who were not going to be employed were often excluded from community corrections placements.  Examples are inmates who are elderly, retired, disabled, chronically ill, unable to work at paid employment, occupied in caring for their own young children or ill or disabled family members.

When such inmates are otherwise eligible, institutions are encouraged to refer them for direct placement on home confinement with special reporting requirements arranged by the CCM.  Of primary concern is ensuring that the Bureau does not incur community medical costs.

7.  **REFERRAL TO COMMUNITY CORRECTIONS.**  Institution staff shall refer inmates for pre-release placement to the appropriate CCM, who, after reviewing the referral material, shall refer the case to the most appropriate program --  CCC, Comprehensive Sanctions Center (CSC), home confinement program, or other community program.

An inmate may not apply for a particular community program.  Once approved for a program, the inmate must agree to all required conditions of that program.

   a.  **Referral Packet.**  Referral packets shall include the Agreement, Home Confinement and Community Control (Attachment A), along with all materials required in the Program Statement on Community Corrections Center (CCC) Utilization and Transfer Procedure.  An inmate who refuses to sign Attachment A may not be considered for participation in Community Corrections programs.

   The referral should indicate the level of services anticipated, including:

      (1)  the appropriateness of placement in a home confinement program;

      (2)  the inmate's residence and job or good job prospects to expedite placement on home confinement;

      (3)  the inmate's need for placement in the more restrictive component of the CCC; and

      (4)  the inmate's need for placement in a specialized program such as substance abuse treatment.

```
                                                    P.S. 7320.01
                                                September 6, 1995
                                                          Page 5
```

   b. __CCM Review.__  Upon receiving each referral packet, the CCM is to review the referral in light of the programming options available in the inmate's release destination area.

   Occasionally, a referral may indicate no obvious risk to the community and no need for CCC services (for example, a supportive family, a stable residence, confirmed employment (if employable), and a positive institutional adjustment).  In such cases, the CCM may bypass a CCC and place the inmate directly on home confinement.

   Conversely, higher risk inmates requiring extensive transition assistance may not be placed on home confinement at all, or placed only briefly following CCC placement.

   c. __Inmate Declination.__  An inmate who declines to participate in a recommended home confinement program may be transferred to a more secure facility.

8.  __PLACEMENT ON HOME CONFINEMENT.__  Only the CCM may approve home confinement.  The CCM shall notify the U. S. Probation Officer (USPO) prior to final approval of placement on home confinement and document that notification is in the file.  General considerations are:

   a. __Program Selection.__  In some jurisdictions, home confinement programs may be available through a U. S. Probation office, a contract CCC or under an Intergovernmental Agreement.  The CCM shall select the program most likely to meet the inmate's needs, giving consideration to such factors as cost effectiveness, geography, and other management variables.

   Home Confinement Program requirements, including accountability and other supervision needs, are specified in Attachment B.  The CCM must approve any modification to these requirements in advance.

   b. __Release Plan Verification.__  To approve a home confinement placement, the CCM must have written verification of the release plan from either the USPO or the CCC, including:

      (1)  The planned residence, including assurance that it has telephone service without prohibited services listed in Attachment A;

      (2)  Adults sharing the residence with the inmate are aware of, and not opposed to, the inmate's plan to participate in the program; and,

      (3)  Employment (for employable inmates).  Release employment is desirable but not required.

```
                                                        P.S. 7320.01
                                                   September 6, 1995
                                                             Page 6
```

   c.  Inmate Requirements for Placement.  To be placed on home confinement, the inmate must sign the "Conditions of Home Confinement" BP-460(73) prior to placement.  The CCM may permit "call waiting" on the telephone of inmates whose placement on home confinement is not electronically monitored.

   (1)  Medical and Dental Expenses.  Inmates on home confinement programs are responsible for their own medical and dental care expenses.  If they are unable, or if they refuse, to be responsible for such costs, they may be returned to a federal institution for evaluation and possible treatment.  In an emergency, the provider may obtain the necessary medical treatment required to preserve the inmate's health but must notify the CCM of such treatment within 24 hours.

   (2)  Subsistence Contributions.  ==Home confinement residents are not required to pay subsistence.==

   d.  Transfer Orders.  When an inmate is being transferred from a CCC to a home confinement program operated by an agency other than that CCC, the CCM shall prepare the Transfer Order to document the official transfer to home confinement.  Otherwise, a Transfer Order is not required.

   e.  Inmate Needs.  Inmates identified as needing other community-based program activities such as mental health or drug treatment, shall normally be able to continue these programs when placed on home confinement.  The CCM shall coordinate the continuation with the provider.

9.  PROGRAM VIOLATIONS.  The CCM shall ensure that each provider of home confinement services develops a system for handling violations of program rules which meets the "due process" criteria of Wolff v. McDonnell and includes provisions for

dealing with minor infractions of program rules and with major violations that could result in the inmate's termination from the program.  The provider must report every violation to the CCM within 24 hours.

10. MODIFICATION OF PROGRAM REQUIREMENTS.  Attachment B specifies the required frequency and nature of contacts required between the provider and the inmate.

After consultation with the provider and the USPO, the CCM, using sound correctional judgement, may permit modification to these requirements, based on the unique characteristics of each case.  The CCM is encouraged to discuss potential modifications with the Management Center Administrator (MCA) and/or the CCRA.

Among the circumstances under which the CCM may typically consider modification are those where:

> # distance or travel time make it impractical for staff and the inmate to travel; and/or

> # the inmate has successfully demonstrated the ability and willingness to conform to all program requirements for a reasonable period (ordinarily two weeks minimum).

In any case, however, unless continuously signalling electronic monitors are used, the home confinement monitor must initiate telephone contact with the inmate no less than once each day at random times of the day.

11. PLACEMENT ON HOME CONFINEMENT FOLLOWING CCC PLACEMENT.  CCCs provide transition services for inmates being released from institutions.  When an inmate has employment and a place to live and has demonstrated that he/she no longer requires the level of accountability and services the CCC provides, the inmate may be placed on home confinement.  For various reasons, some inmates may never progress to a level of responsibility which would warrant placement on home confinement.

12. PROCEDURES FOR DIRECT INMATE PLACEMENT ON HOME CONFINEMENT.  If there is a electronically monitored program available, an inmate who does not require CCC transitional services may be placed directly on home confinement from an institution.

   a. Eligibility.  Generally, an inmate may be considered eligible for direct placement on home confinement if he or she:

> # has no public safety factors,
> # had excellent institutional adjustment,
> # has a stable residence with a supportive family,
> # has confirmed employment (if employable), and
> # has little or no need for the services of a CCC.

   b. <u>Placement.</u>  If the inmate's plan is satisfactory, the home confinement provider and the CCM shall establish the inmate's placement date.  The provider shall provide a written notification of the acceptance and the reporting date to the CCM, with a copy to the referring institution.  The reporting date should be a weekday, and the inmate shall be required to report to the provider within 24 hours of reaching the release jurisdiction.  The CCM shall notify the referring institution via SENTRY and provide instruction on when and where the inmate should report.

Institution staff shall prepare a Transfer Order to document the official transfer to home confinement.  Institution staff shall also prepare the Authorized Unescorted Commitment and Transfer Card, BP-385, including the inmate's picture and fingerprints, and forward it to the CCM at least two weeks prior to the placement.  The CCM shall forward it to the appropriate USPO.

If an inmate is eligible for direct placement on home confinement, but an electronically monitored home confinement program is not available, the CCM and the provider shall arrange for an initial short placement (approximately two weeks) in a CCC to allow the provider to become acquainted with the inmate, orient him or her to the expectations of the program, and assure that the job and living arrangements are appropriate.  After successfully completing that process, the inmate may be placed on home confinement with the CCM's approval.

When problems arise during the orientation period which indicate direct placement on home confinement is inappropriate or should be delayed, the CCM shall delay such placement until the problems have been resolved.

13.  <u>SENTRY RECORDS.</u>  A waiting list has been established in SENTRY to allow CCMs to ensure that all inmates are considered for placement when eligible and reviewed regularly until placed.

A PP34 transaction will establish WLS category to indicate HC ELIG, and a TARGET FOR HOME CONFINEMENT will then be reflected on the PP42 and the PP44.

The CCM office uses a PP63 transaction to ensure all inmates in Bureau custody are tracked in SENTRY while on home confinement programs and have an ARS assignment reflecting that placement.  Inmates assigned to Bureau provider programs shall have that provider's home confinement program location code with an LOCG EQ TH**.  Inmates assigned to U. S. Probation Service (USPS) programs shall be shown with LOCG EQ TH*U and a location indicating the judicial district.  (As examples, the Southern District of Florida would be FFLS, and the District of Colorado would be FCO.)


P.S. 7320.01
September 6, 1995
Page 9

14. **FORMS.**  Institution and Community Corrections staff are to duplicate forms locally.

15. **DISTRIBUTION.**  In addition to normal distribution for Program Statements, copies of this Program Statement shall be available to inmates in inmate law libraries.

CCMs shall provide copies of this Program Statement to Chief USPOs and CCC contractors in their service areas.

\s\
Kathleen M. Hawk
Director

```
BP-S548.073                                              P.S. 7320.01
SEP 1995                                            September 6, 1995
                                                 Attachment A, Page 1
```

**AGREEMENT**

**HOME CONFINEMENT AND COMMUNITY CONTROL**

I, _____, _____,
   Name                                  Register Number

hereby agree to abide by the following Conditions related to my legal participation on home confinement.

I understand that my participation on home confinement will be an alternative to placement in a Community Corrections Center for no more than the last six (6) months or 10% of my sentence, whichever is less. I am aware that I will legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release destination.

I understand that if I decline to participate in the recommended home confinement program I may face administrative reassignment out of the community corrections program.

I agree that during the home confinement period, I will remain at my place of residence, except for employment, unless I am given permission to do otherwise. I also understand that I will be required to pay the costs of the program based on my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding", a modem, "Caller ID" or portable cordless telephones for this period.

I also agree that, if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, follow procedures specified and will not have "call forwarding" on my telephone.


_____, _____
Name                              Date


_____
Staff Witness (Printed Name, Signature, Facility)
Original to Central File.  Copy to CCM.

```
                                            P.S. 7320.01
                                       September 6, 1995
                                   Attachment B, Page 1
```

**REQUIREMENT
FOR HOME CONFINEMENT PROGRAMS**

I.  The following procedures apply to all inmates who are approved for placement on home confinement.

   1. The provider is not required to provide meals, medical treatment, clothing or incidentals, laundry services or other subsistence items to inmates on home confinement.
   2. The provider shall maintain documentation of all staff contacts with inmates on home confinement.

   3. The provider shall notify the CCM immediately of any misconduct or failure of an inmate on home confinement to comply with Home Confinement Conditions.

   4. The provider is not required to reserve a bed at the center for an inmate on home confinement.

   5. The provider shall collect 25% of each employed resident's weekly gross income, rounded down to a whole dollar amount. Residents who are not employed, but who have other means of financial support shall contribute an amount determined appropriate by the provider and approved by the CCM. These fees shall be used to defray program costs. Individual subsistence collections shall not exceed the weekly cumulative contract per diem rate (i.e., the daily rate x 7). All funds collected from those in BOP programs shall be deducted from the monthly billings submitted to the BOP. In some cases, inmate subsistence contributions would cover the entire cost of home confinement. If the monitoring is provided by the USPO, subsistence collection shall not exceed the cost of the electronic monitoring equipment. The respective USPO shall instruct those in USPS-operated home confinement programs in the appropriate payment procedures.

   6. An inmate serving a BOP sentence who fails to remain at the specified location may be considered an escapee. All escapes shall be immediately reported to the CCM.

   7. Inmates on home confinement shall maintain a 9:00 P.M. to 6:00 A.M. curfew each day, unless an exception is recommended by the provider and approved by the CCM.

   8. Drug and alcohol testing and counseling requirements shall apply to inmates on home confinement.

```
                                                        P.S. 7320.01
                                                   September 6, 1995
                                                Attachment B, Page 2
```

II. The following conditions shall apply to those programs that **do not** use electronic equipment to monitor compliance with the conditions of home confinement.

   1.  The provider's staff shall telephonically contact the inmate at random hours each day at home, at work, or both.

   2.  Staff shall visit inmates on home confinement at their homes <u>and</u> at their places of employment at least once each <u>week</u>.

   3.  Inmates on home confinement shall return to the facility at least twice each week for routine progress reviews, counseling, urine testing and other required program participation.

III. The conditions in Section II (above) also apply to those programs that **do** use programmed contact devices, and to those programs that use continuously signalling or hybrid devices that are **not** monitored 24 hours per day, 7 days per week.

   Electronic equipment is a substitute <u>only</u> for the random telephone calls.

IV. The following conditions shall apply to those home confinement programs that: 1) voluntarily choose to come under these conditions, 2) use continuously signalling or hybrid devices (see definitions) and 3) monitor the output of the central computer and respond to violations 24 hours per day, 7 days per week.

   1.  The provider shall have an operations or procedures manual specifying the manner in which the program will operate.  This manual shall be reviewed by the CCM, conform to the minimum standards specified below and serve as the basis for monitoring the operations of the home confinement program.

   2.  The provider's operations/procedures manual shall include their plan of action when a violation is noted.

   3.  Provider staff shall have at least one in-person contact with the offender per week.

       a.  At least one contact each month shall take place at the offender's residence, and one at the place of employment.

       b.  All contacts shall be documented.

```
                                               P.S. 7320.01
                                          September 6, 1995
                                       Attachment B, Page 3
```

II.  The following conditions shall apply to those programs that
     **do not** use electronic equipment to monitor compliance with
           of continued employment and hours worked,
           verification of residence and of participation in
           any other required programs or treatment
           activities.

   5.   The provider shall review the inmate's monthly
        telephone bill to ensure that it has been paid and that
        the service does not include call forwarding or other
        unauthorized services.

   6.   The inmate is expected to remain at his/her residence
        at all times except when he is at work, when traveling
        to and from work or when engaging in other approved
        activities.  The provider's plan may include some
        opportunity for the offender to earn a reduction in the
        hours during which activity is restricted.